519 A.2d 1095

Commonwealth of Pennsylvania, Department of Transportation, Bureau of Driver Licensing, Appellant *v.* Lawrence G. Norton, Appellee.

Submitted on briefs December 12, 1986, to Judges COLINS and PALLADINO, and Senior Judge KALISH, sitting as a panel of three.

*Harold H. Cramer,* Assistant Counsel, with him, *Spencer A. Manthorpe,* Chief Counsel, and *Henry G. Barr,* General Counsel, for appellant.

*Margaret Amoroso Judge, Dessen, Moses & Shei-noff,* for appellee.

OPINION BY JUDGE COLINS, January 8, 1987:

The Department of Transportation, Bureau of Driver Licensing (DOT) appeals a Delaware County Common Pleas Court order reversing a one-year license suspension imposed upon Lawrence G. Norton (appellee) for refusing to submit to a breathalyzer test in violation of Section 1547(b) of the Vehicle Code (Code), 75 Pa. C. S. §1547(b). We reverse.[1]

At approximately 4:00 a.m. on the morning of February 6, 1985, Officer George Timko, of the Tobyhanna Township Police Department, was dispatched to an intersection where he observed appellee's vehicle stopped in a driving lane extending out into the intersection. The vehicle's motor was running, the transmission was in "park," and appellee was slumped forward in the driver's seat with his eyes closed. When appellee did not respond to the officer's knocking on the window, the officer opened the car door and appellee acknowledged Officer Timko's presence and cooperated with requests to produce his driver's license and registration card. Officer Timko noticed the strong odor of alcohol on appellee's breath, his glassy eyes, and his slightly slurred speech; however, he testified that appellee was coherent, spoke intelligently, and was able to walk unsupported. As a result of the snow which had fallen that night, no field tests were conducted.

Officer Timko, relying on his observations, arrested appellee for driving under the influence of alcohol,

---

[1] Our scope of review of a common pleas court decision in a license suspension case is limited to determining whether the court made findings of fact unsupported by substantial evidence, committed an error of law, or abused its discretion. *Waigand v. Commonwealth,* 68 Pa. Commonwealth Ct. 541, 449 A.2d 862 (1982).

placed him in the police car, advised him of his rights and requested that he submit to a breathalyzer test to be performed at the police barracks.

During the trip to the barracks, appellee was in the rear seat of the police vehicle with his eyes closed, unresponsive to Officer Timko's attempts to waken him. After employing ammonia inhalants to no avail, Officer Timko and another trooper carried him into the barracks and prepared to perform a breathalyzer test. During the twenty-minute waiting period, they made several additional attempts to revive him, all to no avail.

Appellee was then transported to the Pocono Hospital. Since Officer Timko believed appellee to be unconscious, he summoned a lab technician and instructed him to draw blood from appellee, who at this point awoke and resisted and struggled. Officer Timko advised appellee that he was requesting appellee to submit a sample of his blood for the purpose of determining the alcohol content thereof, but appellee refused. The officer asked him a second time to which appellee replied "no, you're not taking my blood." According to the officer's testimony, appellee was clearly informed that his failure to submit a sample of his blood would result in the suspension of his operating privilege. After the third request, appellee refused the test, stating "no way." Officer Timko testified at trial that appellee may have panicked when he first awoke, but that he stayed with appellee for a significant amount of time after he awoke in the emergency room, and the officer believed that appellee probably understood the second request and certainly understood the third request that he submit to testing. There was no accident at the scene, nor were there any visible signs of injury.

Appellee's testimony was that on February 5, 1985, he had worked as a ski instructor from 9:00 in the morning until 9:00 that night. After leaving work, appellee "had a few beers" and took a back road through

the mountains and "got stuck" on the road where his car was eventually found. Totally exhausted, he put the car in park, leaned back for a second, and fell asleep. Appellee stated that he woke up when the police officer opened the door and talked to him. He remembered then being informed by the officer that he smelled as if he had been drinking and that the police officer searched him, placed handcuffs on him, and told him he was under arrest for "drinking and driving." Appellee went on to say that when asked to submit to chemical testing, he had no problem with that, but that he was just "beat" at that point and "just sort of more or less collapsed from exhaustion." He claimed that the next thing he remembered was waking up in the hospital with a number of people in the room and that he did not know whether they were attempting to inject something into him. When asked by his attorney if he recalled the police officer asking to submit to the blood test, appellee testified, "I remember they were saying—I didn't know—I have to say yes to that in the sense, but I really didn't quite understand it. And I just—I said, no."

The trial court held that it believed that appellee was unable to consciously refuse or consent to take the test as a result of unconsciousness.

On appeal, DOT contends that the trial court erred in concluding that appellee had met his burden of demonstrating that his refusal to submit to a chemical test was not knowing and conscious due to an unconscious state. We agree.

Where the Commonwealth has proven that the driver failed to submit to an alcohol test, the burden shifts to the driver to prove by competent evidence that he was physically unable to take the test or not capable of making a knowing and conscious refusal. *Department of Transportation, Bureau of Traffic Safety v. Struzzeri,* 95 Pa. Commonwealth Ct. 12, 504 A.2d 961 (1986). Al-

though the evidence indicates that appellee was, indeed, asleep or unconscious prior to his refusal in the emergency room to take the test, his behavior upon waking did not indicate he was unable to make a knowing and conscious refusal. This Court has previously stated:

> [N]o medical testimony as to whether appellee suffered a concussion or as to what effects a severe blow to appellee's head would have had on him was introduced. We note that a driver's simple declaration that he is physically unable to perform a chemical test, without supportive medical proof of his incapacity, will not justify a refusal.

*Department of Transportation, Bureau of Traffic Safety v. Dauer,* 52 Pa. Commonwealth Ct. 571, 574-575, 416 A.2d 113, 115 (1980) (citations omitted.) The trial court held that no medical evidence was necessary in this case because appellee's incapacity was obvious. We must disagree. This Court has repeatedly held that an incapacity defense must be supported by competent medical evidence, where there is no obvious inability suffered by the driver. *See Struzzeri.* More recently, this Court decided the case of *Department of Transportation, Bureau of Traffic Safety v. Gordon,* 95 Pa. Commonwealth Ct. 546, 505 A.2d 1125 (1986). There, a driver was involved in a two-vehicle automobile accident and the investigating police officer found that the driver had been injured and was suffering from chest pains. The injuries consisted of a head laceration, bleeding from the mouth and nose, and a fractured thumb. At the hearing concerning a refusal to submit to a chemical test, the trial court found that the driver was not physically able to make a knowing and conscious refusal to submit to the test because the driver was injured and confused. We reversed, holding that even though there were injuries, they were not of such an

obvious nature that the motorist could have been said to be suffering from an obvious inability to comply with the police officer's request. In the matter *sub judice,* we are bound by that holding.

Certainly, there have been many cases before this Court where the evidence in support of the driver's incapacity was more substantial than it is in this case. If appellee was, indeed, unconscious, his unconsciousness could have been due either to exhaustion or to intoxication. Without competent medical evidence on this point, the trial court erred in concluding that it was unconsciousness due to exhaustion. Additionally, in the emergency room, appellee did recover sufficiently to refuse Officer Timko's repeated requests for a blood test. Again, without competent medical evidence, the trial court erred in concluding that his confusion upon awaking in the emergency room prevented his refusal from being knowing and conscious.

In accordance with *Struzzeri, Dauer,* and *Gordon,* appellee's incapacity defense must be supported by competent medical evidence. Since he was examined by medical personnel at a hospital, he could easily have met his burden if, in fact, such evidence did exist. Since he produced none, we must hold that the trial court erred in sustaining the appeal.

Accordingly, we reverse the decision of the Court of Common Pleas and reinstate the one-year license suspension.

## ORDER

AND NOW, this 8th day of January, 1987, the order of the Court of Common Pleas of Delaware County in the above-captioned matter is reversed. The one-year suspension of appellee's driving privileges by the Department of Transportation is reinstated.